UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FREDERICK MARTIN,

        Plaintiff,

      v.                                     Case No. 25-cv-363-bhl

WHITE SHIRT STAFFARONIE, et al.,

        Defendants.

## SCREENING ORDER

Plaintiff Frederick Martin, who is currently serving a state prison sentence at the Dodge Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Martin's motion for leave to proceed without prepayment of the filing fee, his motion to appoint counsel, and for the screening of his complaint under 28 U.S.C. §1915A(b).

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Martin has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Martin has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $27.17. The Court will grant Martin's motion for leave to proceed without prepaying the filing fee.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Martin is a visually impaired inmate who was incarcerated at the Milwaukee Secure Detention Facility. Dkt. No. 1. Defendants are White Shirt Staffaronie, "John Does," "Jane Does," and the "Superintendent." *Id*. According to the complaint, Martin was transferred from the Milwaukee County Community Reintegration Center to the Milwaukee Secure Detention Facility on August 29, 2024. *Id*. at 3. At that time, Martin's transfer documents noted that he was visually impaired, and correctional staff from the Reintegration Center (who were involved in transferring Martin that day) also verbally confirmed his medical condition. *Id*. Various unidentified John Does and Jane Does at the Milwaukee Secure Detention Facility initially treated Martin as though he was visually impaired and led him from destination to destination by hand. *Id*. At some point during the intake process, White Shirt Staffaronie stated out loud that Martin "was lying" about being visually impaired and directed staff to "leave the plaintiff alone." *Id*. In compliance with White Shirt Staffaronie's orders, some John and Jane Does stopped providing Martin with the accommodations that were otherwise available and provided to visually impaired inmates. *Id*. Instead, Martin was assigned to a cell in the top tier of the institution and, as a result, fell down the stairs while attempting to navigate down them on September 2, 2024. *Id*. at 2. Martin's injury was severe enough that he had to go to the Aurora Sinai Hospital for medical care. *Id*. For relief, Martin seeks monetary damages and injunctive relief. *Id*. at 4.

## THE COURT'S ANALYSIS

Martin asks to proceed with two different claims. Dkt. No. 1. First, he asserts claims related to the conditions of his confinement under the Eighth Amendment. *Id.* Second, he contends Defendants violated his rights under the Americans with Disabilities Act (ADA). *Id.*

Martin's Eighth Amendment claims is brought under 18 U.S.C. §1983. "To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at

the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To proceed with an Eighth Amendment conditions-of-confinement claim, Martin must allege that: (1) he was subjected to conditions that were so adverse that they deprived him "of the minimal civilized measure of life's necessities;" and (2) Defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). More specifically, Martin must allege that Defendants knew of and disregarded an excessive risk to his health or safety. *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Defendants must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw that inference. *Id*.

Martin alleges that White Shirt Staffaronie knew that he was visually impaired based on both his transfer documents and from verbal notice from Reintegration Center staff who transferred him. Despite this notice, White Shirt Staffaronie told John Does and Jane Does that Martin "was lying" about his medical condition and then directed them to stop providing him with for his visual impairments. As a result, Martin was assigned a top tier cell and later fell down the stairs while trying to navigate them blind. Based on these allegations, the Court can reasonably infer that White Shirt Staffaronie may have been deliberately indifferent towards the conditions of his confinement. Therefore, Martin may proceed on an Eighth Amendment claim in connection with allegations that White Shirt Staffaronie was deliberately indifferent towards his visual impairment at the Milwaukee Secure Detention Facility beginning on August 29, 2024.

Martin also seeks both damages and injunctive relief based on violations of the ADA by White Shirt Staffaronie and the "Superintendent." His request for damages fails because it is well established that a plaintiff cannot recover monetary damages under the ADA. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). His request for injunctive relief fails because

he is no longer incarcerated at the Milwaukee Secure Detention Facility. Having been transferred, his request for injunctive relief against staff at his former institution is moot as a matter of law. *See Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016). Therefore, Martin cannot proceed on an ADA claim though this lawsuit.

Martin's attempt to assert claims against John and Jane Doe defendants presents a more complicated issue. Martin does not allege facts sufficient to identify any particular unidentified Doe defendant. Instead, he appears to use the John/Jane Doe placeholder for anyone who should have known that he was blind based on his transfer documents and who should have ignored White Shirt Staffaronie's words that he "was lying" about it. His complaint is unclear on whether the John and Jane Does he mentions prior to White Shirt Staffaronie's involvement were the same John Does and Jane Does who later followed White Shirt Staffaronie's directive. To hold any particular individual liable under Section 1983, Martin needs to describe what that individual Doe defendant knew about his medical condition; what they said or did to violate his rights; and when and where the interaction occurred. Without these basic facts, it is not possible to identify the Doe defendants or give those individuals notice of what they allegedly said or did to violate his rights. Because Martin has not identified any specific interactions with any particular, even if unidentified, Doe defendant, he has failed to state a claim against those unidentified persons and the Court will dismiss the John and Jane Does from the case. If Martin is later able to recall specific interactions he had with other individuals, he may seek to amend his complaint to add them as defendants.

Finally, the Court will also dismiss the Superintendent from this case. Martin does not allege any specific facts against the Superintendent; and his role as a supervisor at the institution is not (on its own) a basis for Section 1983 liability. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise").

**MOTION TO APPOINT COUNSEL**

Martin also filed a motion to appoint counsel. Dkt. No. 4. He states, "Plaintiff request that counsel be appointed because he is visually impaired and [barely] able to read and write. I can [barely] see even with the reading glasses." *Id*.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth*., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. To demonstrate he satisfied the first prong, Martin must show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Id*. When

6

considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-91. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

The Court will deny the motion to appoint counsel without prejudice because Martin has not satisfied either prong. Martin has not attached evidence showing that he made reasonable attempts to recruit counsel on his own. And it is far too early in the case to tell whether the case is too complex for him to adequately represent himself. Toward that end, the complaint has not yet been served on the remaining defendant and he has not yet filed a responsive pleading. Until matters proceed, the Court is not in a position to determine whether the difficulty of the case exceeds Martin's capacity to present it. Martin asserts that he is visually impaired and has no one helping him with the case. However, he has filed two lawsuits in this district that are clear and coherent. *See Martin v. Thoreson*, case no. 24-cv-1467-bhl, *see Martin v. Staffaronie, et al*., case no 25-cv-363-bhl. Thus, while Martin appears to have vision difficulties that compromise his physical safety in connection with his daily living at the institution, his legal filings show that his

7

eyesight is sufficient to read orders, write documents, and proceed with filing lawsuits.  In other words, the accommodations that may be needed for a visually impaired inmate's physical safety at the institution are not the same as those needed to litigate a case.  Based on his legal filings, the Court does not have any concerns at this time about Martin's ability to litigate this case.  If Martin's medical condition changes, he should notify the Court.  But at this time, the Court will not recruit counsel.

### CONCLUSION

The Court finds that Martin may proceed on an Eighth Amendment claim in connection with allegations that White Shirt Staffaronie was deliberately indifferent towards his visual impairment at the Milwaukee Secure Detention Facility beginning on August 29, 2024.

**IT IS THEREFORE ORDERED** that Martin's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 4) is **DENIED without prejudice**.

**IT IS THEREFORE ORDERED** that John Does, Jane Does, and Superintendent are **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Martin's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on White Shirt Staffaronie.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, White Shirt Staffaronie shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

8

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that the agency having custody of Martin shall collect from his institution trust account the **$322.83** balance of the filing fee by collecting monthly payments from Martin's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Martin is transferred to another institution, the transferring institution shall forward a copy of this Order along with Martin remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Martin is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

9

Martin is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on June 11, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge